Ashok Ramani (SBN 200020)
ashok.ramani@davispolk.com
Philip T. Sheng (SBN 278422)
philip.sheng@davispolk.com
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone:     (650) 752-2000
Facsimile:     (650) 752-2111

*Counsel for Plaintiff Splunk Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPLUNK INC., | Case No. 3:20-cv-4377 |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT** |
| DEUTSCHE TELEKOM AG, | |
| Defendant. | TRIAL BY JURY DEMANDED |

Plaintiff Splunk Inc. ("Splunk") for its Complaint against Defendant Deutsche Telekom AG ("DT" or "Defendant") alleges as follows:

## INTRODUCTION

1.     As one of San Francisco's most successful homegrown software companies, Splunk develops enterprise software that allows businesses to bring data to every part of their business. Companies of all sizes recognize the value of Splunk's products and, significantly, more than 90 of the Fortune 100 are Splunk customers.

2.     DT is a German conglomerate that provides telecommunication services, a completely different field than enterprise-software development. Originating from a state-run monopoly, on information and belief, DT continues to hold a leading market position and enjoy strong consumer recognition in Germany. DT provides its telecommunications products and services worldwide, including in the United States through its subsidiary T-Mobile US, Inc.

3.     DT has secured trademark rights worldwide to the color magenta, a specific shade of purplish-pink, in the field of telecommunications. Apparently not content with that exclusivity, DT has repeatedly attempted to block companies—even those, like Splunk, in completely different industries—from using any shade of magenta (or even straight pink) in connection with branding. For example, in 2008, DT sent a letter to an online technology blog, Engadget, demanding that it stop using magenta in one of its logos. After Engadget posted DT's letter to its site, assuring Engadget readers that DT's claim of potential consumer confusion was "[n]ot an early April Fool's joke,"[1] DT, on information and belief, backed down. More recently, in 2019, DT threatened Lemonade, an online provider of homeowners and renters insurance that uses the color pink—not magenta—in its branding.[2] DT's threats and subsequent litigation prompted Lemonade to petition to cancel DT's pertinent trademark in the European Union, where it remains pending.

---

[1] https://www.engadget.com/2008-03-31-deutsche-telekom-t-mobile-demands-engadget-mobile-discontinue.html (last visited June 26, 2020)
[2] https://techcrunch.com/2019/11/04/lemonade-gets-a-nastygram-from-deutsche-telekom-over-its-use-of-magenta-says-it-will-fight/ (last visited June 26, 2020)

4. After threatening Splunk with litigation since January, DT initiated trademark-infringement proceedings in its home court in Germany and reserved rights to do so in the United States. DT's aggression has forced Splunk to do something it has never done in its nearly 17 years of existence: file a federal case in the United States. Desiring business certainty, Splunk seeks a declaration that its multicolor gradient branding does not infringe any pertinent DT trademark.

**PARTIES**

5. Plaintiff Splunk is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 270 Brannan Street, San Francisco, California 94107.

6. On information and belief, Defendant DT is a corporation organized and existing under the laws of Germany, having its principal place of business at Friedrich-Ebert-Allee 140, Bonn 53113, Germany.

**JURISDICTION AND VENUE**

7. This action includes a declaratory judgment action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks).

8. The Court has specific personal jurisdiction over Defendant because Defendant's activities within this judicial district gave rise to the claims in this matter, in that it sent Splunk a cease-and-desist letter in this judicial district threatening legal action. As explained further below, Defendant is monitoring Splunk's trademark applications and has indicated to the United States Patent & Trademark Office that it intends to file a notice of opposition against one of Splunk's pending applications. Furthermore, Defendant obtained a preliminary injunction from a German court *ex parte* that, if permitted to take effect, will require Splunk to take action in this judicial district, including but not limited to modifying its website, marketing and promotional materials, mobile apps, and social media accounts. Splunk has also had to take steps in this

District to issue a bank guarantee for €270,000 as a security deposit after a different chamber in the German court granted Splunk's request for a temporary stay of the preliminary injunction. The Court also has personal jurisdiction over Defendant because, upon information and belief, Defendant conducts substantial business in this judicial district, and Defendant offers products and services under its asserted magenta trademark within this judicial district.  In the alternative, the Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2) because, upon information and belief, DT is not subject to jurisdiction in any state's courts of general jurisdiction, and is therefore subject to personal jurisdiction in any district because it has registered trademarks with the United States Patent & Trademark Office and alleges that it is using those marks in commerce within the United States.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because Defendant sent Splunk a cease-and-desist letter in this judicial district threatening legal action and because Defendant's activities are causing harm to Splunk in this district.  Venue is also proper in this judicial district pursuant to 28 U.S.C. 1391(c)(3) because Defendant is a foreign corporation and thus, for purposes of venue, may be sued in any judicial district.

## GENERAL ALLEGATIONS

**I.      SPLUNK'S BUSINESS**

10.     Founded in 2003, Splunk is a publicly traded corporation headquartered in San Francisco.  Splunk is a developer and provider of enterprise software solutions that enable organizations to gain real-time operational intelligence by harnessing the value of their data regardless of where it is coming from.

11.     Splunk's innovative software products enable enterprises to investigate, monitor, analyze, and act on machine data regardless of format or source.  In contrast to traditional IT systems that require users to establish the format of their data prior to collection in order to answer a pre-set list of questions, Splunk's software allows users to run queries on data without having to define or understand the structure of the data prior to collection and indexing.

12.     Splunk's flagship product, Splunk Enterprise, is a machine data platform that provides a range of capabilities for data collection, indexing, search, reporting, analysis, alerting, monitoring, and management.

13.     Splunk's customers leverage its offerings for various uses, including infrastructure and operations management, security and compliance, software development and IT operations, applications management, and business analytics.  They are sophisticated businesses and enterprises, government agencies, and educational institutions that select Splunk's products after careful investigation, testing, and deliberation, followed by heavily negotiated purchases.

14.     Splunk's products have been hugely successful in the United States and around the world.  Its customers include, *inter alia*, Comcast, Coca-Cola, Nasdaq, and the U.S. Census Bureau.  As mentioned earlier, more than 90 members of the Fortune 100 currently use Splunk's products.

15.     Splunk generated revenue of approximately $2.359 billion for fiscal year 2020, and employs more than 6,000 people in more than 45 offices worldwide.

16.     Splunk has received significant media attention for its revolutionary approach to big data, including in articles in *The New York Times*, *The Wall Street Journal*, and *Forbes*.

## II.     SPLUNK'S TRADEMARKS AND COLOR GRADIENT

17.     Splunk's products and promotional materials prominently feature its house marks, SPLUNK and SPLUNK>, which it has been using since at least 2005, and for which it owns several U.S. trademark registrations, including U.S. Registration No. 3,269,249 for SPLUNK and U.S. Registration No. 4,374,897 for SPLUNK>.

18.     On or around July 11, 2019, Splunk began using a color scheme in its promotional materials featuring a gradient with transitions between coral, orange, and magenta that appear to be arbitrary.  Splunk specifically chose to include magenta and orange in its color gradient because they are known to be particularly effective at capturing attention.  By using a gradient that includes these colors, Splunk's marketing and promotional materials stand out in an industry dominated by blue, black, and gray.

19.     Since at least as early as September 18, 2019, Splunk has also used this three-color gradient as a background for some of its logos, some of which include the SPLUNK> house mark.

20.     Splunk has applied to register three trademarks that include its three-color gradient (collectively the "Splunk Gradient Marks"):

Coral, Orange, and Magenta Design, U.S. Serial No. 88/786,508. Attached hereto as **Exhibit A** is a true and correct copy of a print-out of the Trademark Status & Document Retrieval ("TSDR") page for U.S. Serial No. 88/786,508;

SPLUNK> & Design, U.S. Serial No. 88/786,496.  Attached hereto as **Exhibit B** is a true and correct copy of a print-out of the TSDR page for U.S. Serial No. 88/786,496; and

D2E & Design, U.S. Serial No. 88/812,276.  Attached hereto as **Exhibit C** is a true and correct copy of a print-out of the TSDR page for U.S. Serial No. 88/812,276.

21.     Each of these applications has been approved for publication by the United States Patent & Trademark Office on the Principal register, and each application identifies the following goods in Class 9: "Downloadable computer software for collecting, analyzing, evaluating, monitoring, and transmitting data in the fields of compliance, network security, enterprise security, and maintenance; downloadable computer software for detecting fraudulent transactions and activities; downloadable computer software for investigating, remediating, and responding to fraud and to network and enterprise threat incidents; downloadable computer software for troubleshooting, diagnosing, and protecting computer software, hardware, networks, virtual machines, and operational technology; downloadable computer software for use in analyzing and monitoring computer networks; downloadable computer software for diagnosing industrial and business performance issues; downloadable computer software in the field of application analytics; downloadable computer software for providing operational intelligence, business analytics, security information, and troubleshooting based on data; downloadable data

mining software," and the following services in Class 42: "Providing temporary use of non-downloadable software and applications for collecting, analyzing, evaluating, monitoring, and transmitting data in the fields of compliance, network security, enterprise security, and maintenance; providing temporary use of non-downloadable software and applications for detecting fraudulent transactions and activities; providing temporary use of non-downloadable software and applications for investigating, remediating, and responding to fraud and to network and enterprise threat incidents; providing temporary use of non-downloadable software and applications for troubleshooting, diagnosing, and protecting computer software, hardware, networks, virtual machines, and operational technology; providing temporary use of non-downloadable software and applications for use in analyzing and monitoring computer networks; providing temporary use of non-downloadable software and applications for diagnosing industrial and business performance issues; providing temporary use of non-downloadable software and applications in the field of application analytics; providing temporary use of non-downloadable software and applications for providing operational intelligence, business analytics, security information, and troubleshooting based on data; providing temporary use of non-downloadable data mining software; consulting services in the field of information technology; technical consulting services in the fields of datacenter architecture, public and private cloud computing solutions, and evaluation and implementation of information technology and services; technical support services, namely, remote and on-site infrastructure management services for monitoring, administration and management of public and private cloud computing and information technology systems."

22.    DT appears to be monitoring the status of Splunk's trademark applications in the United States.  Indeed, for Spunk's Coral, Orange, and Magenta Design, U.S. Serial No. 88/786,508, DT submitted a request to the United States Patent & Trademark Office for a 90-day extension of time to file a notice of opposition against the mark, which the Patent & Trademark Office granted on June 3, 2020.  DT did not appear to submit similar requests with respect to Splunk's SPLUNK and D2E marks.

### III.    DEFENDANT DEUTSCHE TELEKOM AG HAS THREATENED NUMEROUS COMPANIES OUTSIDE ITS FIELD WITH TRADEMARK INFRINGEMENT EVEN THOUGH THE USE OF THE COLOR MAGENTA IS COMMON AND WIDESPREAD

23.    From its German headquarters, DT operates several subsidiaries worldwide, including the mobile network operator T-Mobile US, Inc.

24.    DT has repeatedly and aggressively asserted trademark rights in the color magenta and attempted to block companies—even those in completely different industries—from using any shade of magenta or pink in connection with branding.  In addition to the Engadget and Lemonade examples discussed earlier, in 2015, DT threatened a smartwatch company called OXY, forcing OXY to change all of its branding to yellow and black after the small company lacked the financial resources to challenge DT's claims.[3]  As yet another example, in 2018, DT sent threats to a small British company called DataJAR, which at the time employed a total of seven employees that wrote software to manage Apple iPhone and Mac devices.[4]  Numerous other examples exist.

25.    Despite its efforts to do so, DT cannot keep up with the common and widespread use of magenta by companies outside the field of telecommunications.  For example, tech-giant Apple has recently started to advertise iTunes using a color gradient very similar to the coral, orange, and magenta gradient used by the Splunk Gradient Marks:[5]



---

[3] https://www.theverge.com/2015/11/19/9761070/t-mobile-magenta-trademark-oxy-smartwatch (last visited June 26, 2020)
[4] https://www.bbc.com/news/uk-england-sussex-44107621 (last visited June 26, 2020)
[5] https://www.apple.com/itunes/ (last visited June 26, 2020)

As another example, Amazon prominently uses magenta to advertise its music streaming service:[6]



As yet another example, Instagram uses a color gradient featuring magenta in its logo and branding:[7]

The logos of the software products In Design[8] and Xd Vector[9] offered by Adobe Systems also feature magenta, and so do the logos of Samsung's Galaxy Store[10] and the popular JusTalk video calling app:[11]

---

[6] https://www.instagram.com/p/B_Kxct3jr52 (last visited June 26, 2020)
[7] https://en.instagram-brand.com (last visited June 26, 2020)
[8] https://www.adobe.com/products/indesign.html (last visited June 26, 2020)
[9] https://www.adobe.com/products/xd.html (last visited June 26, 2020)
[10] https://www.samsung.com/global/galaxy/apps/galaxy-store (last visited June 26, 2020)
[11] https://justalk.com/ (last visited June 26, 2020)

8

  

These are just a few of the companies using magenta outside the field of telecommunications. As these examples show, no company—except DT—believes that magenta is completely off limits. These logos, and not to mention the Splunk Gradient Marks, are readily distinguishable from DT's branding:[12]





### B.    Defendant's Cease & Desist Letter to Splunk

26.    No company is safe from DT's self-proclaimed monopoly on the use of magenta in corporate branding. On February 12, 2020, DT sent a letter to Splunk's San Francisco and Munich offices, claiming that Splunk's use of the color magenta was unlawful. Attached hereto as **Exhibit D** is a true and correct copy of DT's February 12, 2020, letter to Splunk.

27.    In its letter, DT alleges that it uses the color magenta in all company communications and in all advertising materials in Germany, elsewhere in the EU, and

---

[12] https://www.t-systems.com/de/en (last visited June 26, 2020); https://www.t-mobile.com/offers/big-savings-when-you-switch (last visited June 26, 2020)

worldwide.  It alleges that through its intense use of the color, magenta "has become a unique and well-known identifier for the goods and services of DT."  *Id.* ¶ 1.

28.     DT also alleges that its subsidiary, T-Systems, uses magenta as intensively as DT and offers IT and telecommunication services.  *Id.* ¶ 3.

29.     DT alleges that it owns various trademark registrations worldwide to protect its trademark for the color magenta.  DT specifically identifies an EU registration and two German registrations.  *Id.* ¶ 4.

30.     DT also alleges that it owns trademark registrations in the United States that incorporate magenta.

31.     DT is identified as the owner of U.S. Registration No. 5,706,644 for "the color magenta applied as a background carrier for advertisements for telecommunication and information technology services, personal communications services, electronic mail services, electronic transmission and broadcasting services, and wireless Internet access services."  The registration identifies the following services in Class 38: "Telecommunications and information technology services, namely, wireless transmission of voice, data, images, audio, video, and information; telecommunications services, namely, personal communication services; electronic transmission of mail and messages; providing multiple-user access to a global computer information network; transmission of audio and video by telecommunications networks, wireless communication networks, the Internet, and satellite; broadcasting of radio and television programs; providing wireless Internet access."  Attached hereto as **<u>Exhibit E</u>** is a true and correct copy of a print-out of the TSDR page for U.S. Registration No. 5,706,644.

32.     DT is identified as the owner of U.S. Registration No. 5,674,478 for "the color magenta as applied to the surface of product packaging for prepaid smart cards, mobile phones, tablet computers, mobile hotspot devices, wireless communication devices, battery chargers, cases for mobile phones and table computers, head phones, and accessories for the foregoing."  The registration identifies the following goods in Class 9: "Telecommunications and information technology equipment, namely, mobile phones, tablet computers, mobile hotspot devices, wireless communication devices for voice, data or image transmission, battery chargers, cases

for mobile phones and tablet computers, headphones, and accessories therefore, namely, mobile telephone belt clips, headphone replacement ear pieces, screen protectors comprised of plastic or glass adapted for use with portable electronic devices, stands for mobile phones; prepaid smart cards for mobile telephones and internet access."  Attached hereto as **Exhibit F** is a true and correct copy of a print-out of the TSDR page for U.S. Registration No. 5,674,478.

33.    DT is identified as the owner of U.S. Registration No. 5,601,454 for "the color magenta as applied to the splash screen of mobile computer applications."  The registration identifies the following goods in Class 9: "Mobile applications for wireless data communication and managing user account settings."  Attached hereto as **Exhibit G** is a true and correct copy of a print-out of the TSDR page for U.S. Registration No. 5,601,454.

34.    DT is identified as the owner of U.S. Registration No. 3,263,625 on the Supplemental Register for "the color magenta alone, which is the approximate equivalent of Pantone Matching System, Rhodamine Red U, used on the background of product displays and advertisements found in a store."  The registration identifies the following services in Class 38: "Telecommunication and information technology services, namely, wireless transmission of voice and data; providing multi-user access to a global communications network; two-way wireless transmission of electronic mail, text and images between mobile telecommunications terminals and computers; voice mail and messaging services; wireless broadcasting of textual content to mobile telecommunications terminals and computers; providing customized audio playback of musical, spoken word and other auditory content over a telecommunications network."  Attached hereto as **Exhibit H** is a true and correct copy of a print-out of the TSDR page for U.S. Registration No. 3,263,625.

35.    DT's letter alleges that Splunk's use of magenta on its website, app, social media profiles, and in its advertising infringes DT's magenta color marks, and reserves its right to take legal action against the use of the color magenta by Splunk "according to unfair competition law as well as based on US trademark law."  Ex. D ¶¶ 6 and 13.

36.    DT's letter specifically reproduces images of Splunk's website available at www.splunk.com, mobile app icons, social media logos and content, a Splunk brochure, and

Splunk's U.S. and foreign advertising materials as examples of Splunk's allegedly infringing use of the color magenta through Splunk's three-color gradient:

Splunk's Website at www.splunk.com



Icons used for Splunk Mobile app, available through Apple's App Store, and Google Play

 

Splunk Social Media Content on Facebook, Twitter, Instagram, YouTube & LinkedIn





12

U.S., German, and Canadian Marketing and Promotional Materials

 

 

37.    DT alleges that "Splunk and [DT] both provide services in connection with the collecting and delivering of data (database services).  Therefore, consumers will be misled that there is an organizational or economic connection between Splunk and [DT]."  *Id.* ¶ 6.

38.    DT threatens that it is "fully prepared to take all legal measures necessary before the competent courts in order to defend its valuable Magenta trademarks."  *Id.* ¶ 10.  It also alleges that in addition to claims for an injunction, it would have claims for damages.  *Id.*

### C.    Defendant's Legal Actions in Germany

39.    On March 19, 2020, DT informed Splunk that it had filed for an EU-wide preliminary injunction against Splunk's use of the color magenta, and that the Civil Chamber of the Regional Court of Hamburg, which oversees general civil matters, had granted the injunction.

40.    Because Splunk is headquartered in San Francisco, the injunction will require Splunk to take action in this judicial district to modify its products, its website, and its marketing and promotional materials.  The injunction will also require Splunk to take action in this judicial district with respect to the Splunk Mobile app available through the Apple App Store and Google

COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO. 3:20-CV-4377

Play and its social media logos and content on Facebook, Twitter, Instagram, YouTube & LinkedIn.

41.    On March 25, 2020, Splunk sought review of the preliminary injunction order from the Chamber for Commercial Disputes at the Regional Court of Hamburg, which specializes in hearing commercial disputes including trademark matters.  Splunk also requested a temporary stay of the preliminary injunction during the pendency of the review, which the court granted on April 17, 2020, conditioned on Splunk securing a bank guarantee for €270,000 (around $293,000 USD) as a security deposit.

42.    The Chamber for Commercial Disputes held a hearing on June 9, 2020, and indicated it would issue a decision on the merits of DT's claims on or before July 7, 2020.  The court declined to lift the stay of the preliminary injunction.

**D.    The Parties' Attempts to Resolve This Matter Informally Failed**

43.    For months, the parties engaged in confidential discussions to resolve this matter informally but could not reach an agreement.  Splunk will not discuss the content of those discussions here.  But Splunk proposed reducing the amount of magenta in the Splunk Gradient Marks while preserving the character and integrity of its branding approach.  Splunk proactively did this not because it believes it is legally required to, but because Splunk prefers to avoid litigation except as a final resort (as, regrettably, is the case here).  Splunk will not agree, however, to completely eliminate magenta from the Splunk Gradient Marks, as that would harm its brand and condone DT's improper threats and overreach.  The updated Splunk Gradient Marks, representative samples of which are shown below, cannot and do not infringe any pertinent DT mark.  Unfortunately, DT has refused to provide Splunk assurances that even the updated Splunk Gradient Marks do not infringe.

COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO. 3:20-CV-4377



### IV. THERE IS NO LIKELIHOOD OF CONFUSION BETWEEN DEFENDANT'S ASSERTED MAGENTA MARKS AND THE SPLUNK GRADIENT MARKS

44.     Splunk disputes that its use of the original and updated Splunk Gradient Marks will cause any likelihood of confusion.

45.     The Splunk Gradient Marks (hereinafter referring to both the original and updated Splunk Gradient Marks) do not feature the uninterrupted use of magenta as DT's asserted mark. Instead, the Splunk Gradient Marks feature a gradient that transitions between three colors (orange, magenta, and coral) in a fashion that appears to be arbitrary.  Further, because the Splunk Gradient Marks are always used in conjunction with, or in close proximity to, its SPLUNK and SPLUNK> house marks, consumers will rely on those house marks, not the color gradient, to identify the source of Splunk's goods and services.  Thus, the asserted magenta mark is not at all similar to the Splunk Gradient Marks as they are encountered in the marketplace.

46.     Moreover, the goods and services offered under the Splunk Gradient Marks are not competitive with or related to the goods and services DT offers in the United States under its asserted magenta mark.  Splunk's software solutions are for data analysis.  Indeed, its applications to register the Splunk Gradient Marks identify goods such as "[d]ownloadable

computer software for collecting, analyzing, evaluating, monitoring, and transmitting data in the fields of compliance, network security, enterprise security, and maintenance," in Class 9 and similar downloadable software services in Class 42. Splunk does not offer telecommunications services, nor did it include any telecommunications services in its applications to register the Splunk Gradient Marks.

47.    In contrast, DT provides telecommunications services and mobile telecommunications equipment, such as mobile phones and tablets, but no goods or services for data analysis. DT's Registration No. 5,706,644 for the color magenta identifies services such as "telecommunications services, namely, personal communication services." DT's Registration No. 5,674,478 identifies goods such as "mobile phones, tablet computers, mobile hotspot devices, [and] wireless communication devices." DT's Registration No. 5,601,454 identifies goods such as "[m]obile applications for wireless data communication." DT's Registration No. 3,263,625 identifies services such as "wireless transmission of voice and data." These goods and services are not similar, nor closely related, to Splunk's complex data analysis software.

48.    DT alleges that Splunk and DT's goods and services are related because "Splunk and [DT] both provide services in connection with the collecting and delivering of data (database services)." (Ex. D ¶ 6.) This broad description is not sufficient to establish that the goods and services offered by DT and Splunk are related because all software (regardless of purpose) collects data of some type—whether from user input, a local hard drive, remote servers, etc., and delivers data, whether to an output device such as a monitor, or a hard drive or server. Software is not related to telecommunications services merely because software collects and uses data while telecommunications services transmit data. Were that not the case, any distinction between software and telecommunications would collapse, thereby eviscerating the public-notice function of trademark use descriptions and different trademark classes.

49.    Furthermore, there is no overlap in consumers in the pertinent fields or channels of trade used by the parties to market their products and services. Splunk's goods and services offered under the Splunk Gradient Marks are directed to highly sophisticated business consumers who require advanced tools for analysis of big data. They are not commodity goods or services.

1   Purchasing decisions often take weeks or months and involve multiple conversations and, on

2   many occasions, meetings—resulting in negotiated prices and customized software designed to

3   meet each customers' specific needs.  Splunk does not market its goods or services to individual

4   consumers, or in the channels of trade that are used to market telecommunications services and

5   mobile devices.

6       50.     In contrast, DT's telecommunications services and mobile devices are commodity

7   goods and services promoted primarily to individuals seeking mobile telephony and internet

8   services.  They are primarily offered in retail locations that an individual who needs to replace a

9   broken or lost mobile device or who wants to change his or her mobile service provider visits in

10  person, or orders online.  To the extent DT offers telecommunications services to businesses, it

11  occurs in an entirely different context and channel of trade than sales of Splunk's software for

12  data analysis because such services are related to business connectivity needs, not data analysis

13  needs.

14      51.     DT alleges that Splunk is trying to associate itself with DT so that consumers are

15  led to believe that Splunk is endorsed by or affiliated with DT.  That is false.  As the vast

16  majority of the Fortune 100 would attest, Splunk has its own successful product suite and brand

17  and has absolutely no reason to attempt to associate itself with DT.  As discussed above, Splunk

18  specifically chose to include magenta and orange in its color gradient because those colors are

19  effective at capturing attention, and magenta is one of the four primary colors used in digital

20  printing.  Contrary to DT's belief, it does not have an unfettered monopoly on the use of magenta

21  in any corporate branding, particularly in view of the functional benefit the bright color alone or

22  in combination has at capturing attention.

23  **V.    THERE IS NO LIKELIHOOD OF CONFUSION BETWEEN**
        **DEFENDANT'S ASSERTED MAGENTA MARK AND SPLUNK'S**
24      **DECORATIVE USE OF ITS THREE-COLOR GRADIENT**

25      52.     Splunk further disputes that decorative uses of a gradient that transitions between

26  coral, orange, and magenta on its website and in written and online materials is source-

27  identifying or likely to cause confusion.

28

17

53.     Significantly, Splunk's website and written materials are all branded with its house marks, SPLUNK and SPLUNK>, on which consumers will rely to identify the source of Splunk's goods and services.  This alone will serve to distinguish the source of the parties' goods and services.

54.     Further, as noted above, Splunk's goods and services are not competitive with or even related to the goods and services DT offers under its claimed magenta mark.  There also is no overlap in the consumers or channels of trade used by the parties.  Defendant sells commodity telecommunications services and mobile devices, while Splunk offers sophisticated data collection and analysis software to businesses.  Most consumers of DT's goods and services are not likely even to see Splunk's website or written materials, and those who do will be sophisticated business consumers who will not mistakenly believe that Splunk's goods and services originate from or are affiliated with DT.

55.     Despite the large scale and reach of Splunk's business and substantial use of a three-color gradient on its website and in written materials since mid-2019, Splunk is not aware of any instances of actual confusion.  DT has identified none.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment of Non-Infringement

56.     Splunk incorporates by reference the allegations set forth in paragraphs 1-55, as if fully set forth herein.

57.     DT has alleged infringement under U.S. trademark law based upon rights that it claims in the color magenta.

58.     DT has alleged that the color magenta has become a unique and well-known identifier for its goods and services because of its intensive use of the color in all communications and advertising materials worldwide.

59.     DT owns U.S. Registration No. 5,706,644 for "the color magenta applied as a background carrier for advertisements for telecommunication and information technology services, personal communications services, electronic mail services, electronic transmission and broadcasting services, and wireless Internet access services."  The registration identifies certain

telecommunications services in Class 38.  DT also owns U.S. Registration No. 5,674,478 for "the color magenta as applied to the surface of product packaging for prepaid smart cards, mobile phones, tablet computers, mobile hotspot devices, wireless communication devices, battery chargers, cases for mobile phones and table computers, head phones, and accessories for the foregoing."  The registration identifies certain telecommunications equipment in Class 9.  DT also owns U.S. Registration No. 5,601,454 for "the color magenta as applied to the splash screen of mobile computer applications."  The registration identifies mobile applications for telecommunications in Class 9.  DT also owns U.S. Registration No. 3,263,625 for "the color magenta alone . . . used on the background of product displays and advertisements found in a store."  The registration identifies certain telecommunications services in Class 38.

60.     DT has threatened to seek injunctive relief and damages for trademark infringement, including under U.S. trademark law, arising from Splunk's use of the color magenta as part of the decorative three-color gradient that Splunk has been using on its website, social media, and in written materials, as well as Splunk's use of the Splunk Gradient Marks.

61.     DT's allegations of U.S. trademark infringement have caused, and will continue to cause, damage to Splunk.

62.     There is an actual case or controversy concerning Splunk's right to use its three-color gradient on its product and in its marketing and promotional materials, and as an element of the Splunk Gradient Marks, such that the Court has jurisdiction over Splunk's request for declaratory relief.

63.     There is no likelihood of confusion between Splunk's use of its three-color gradient, or of the Splunk Gradient Marks, in connection with its software goods and services and DT's use of magenta in connection with telecommunications services and mobile devices.

64.     Splunk requests relief from the uncertainty and controversy that DT's threats of legal action have created, and that the Court declare that Splunk's use of its three-color gradient and of the Splunk Gradient Marks does not infringe any trademark rights that DT may have in the color magenta.

1

## **PRAYER FOR RELIEF**

2     WHEREFORE, Splunk prays for the following relief:

3     65.     That judgment be entered in favor of Splunk and against Defendant on each and

4 every Count of this Complaint;

5     66.     That this Court deny Defendant relief of any kind based upon its claim to rights in

6 the magenta color;

7     67.     That Splunk be awarded it costs incurred, including reasonable attorneys' fees;

8 and

9     That the Court grant such other and further relief as it deems just and proper.

10

11 Date: June 30, 2020                                         Respectfully submitted,
                                                            DAVIS POLK & WARDWELL LLP
12
                                                            */s/ Ashok Ramani*
13                                                          Ashok Ramani (SBN 200020)
14                                                          ashok.ramani@davispolk.com
                                                            Philip T. Sheng (SBN 278422)
15                                                          philip.sheng@davispolk.com
                                                            1600 El Camino Real
16                                                          Menlo Park, California 94025
                                                            Telephone:     (650) 752-2000
17                                                          Facsimile:      (650) 752-2111
18
                                                            *Counsel for Plaintiff Splunk Inc.*
19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO. 3:20-CV-4377