UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPLUNK INC., <br><br> Plaintiff, <br><br> v. <br><br> DEUTSCHE TELEKOM AG, <br><br> Defendant. | Case No. 3:20-cv-04377-JD <br><br> **ORDER RE MOTION TO DISMISS** <br> Re: Dkt. No. 26 |

Plaintiff Splunk is seeing red over the color magenta, namely the shade used commercially by defendant Deutsche Telekom (DT), the well-known German telecom company. In this action for a declaration of non-infringement of a trademark, Splunk says that DT has "aggressively asserted trademark rights in the color magenta," and has "attempted to block companies" from using the color or similar shades of pink. Dkt. No. 1 ¶ 24. Splunk has deployed promotional materials that feature a coral, magenta, and orange "color gradient" said to be "particularly effective at capturing attention." *Id*. ¶ 18. Splunk was concerned DT would come after it in a United States court for trademark infringement, and filed this case as a preemptive strike for declaratory relief under 28 U.S.C. §§ 2201, 2202. *Id*. ¶ 7.

DT asks to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of an actual case or controversy sufficient to create federal jurisdiction. Dkt. No. 26. DT acknowledges that it sent a cease-and-desist letter to Splunk, and filed a civil action in Germany against it, over Splunk's use of its color gradient in the European Union (EU). *Id*. at 3-4. DT insists that the letter and civil action involved a purely European dispute brought under EU and German law, and for Splunk's conduct in the EU only. *Id*. at 3-4. DT says that it has not sent a cease-and-desist letter to Splunk for its color use in the United States, and did not oppose Splunk's

trademark application for color gradient marks before the United States Trademark Trial and Appeal Board (TTAB). *Id*. at 5. In DT's view, the absence of hostile gestures in the United States means that Splunk has not demonstrated a live dispute sufficient for jurisdiction under the Declaratory Judgment Act. *Id*. at 5-6.

The complaint alleges essentially the same operative facts but reaches a different conclusion. Splunk's argument for jurisdiction is based primarily on DT's letter, which is attached as Exhibit D to the complaint, and incorporated by reference. *See* Dkt. No. 1 ¶ 26; Dkt. No. 1-4 (Exhibit D). In the letter, which was sent by DT's counsel in Hamburg, Germany, Dkt. No. 1-4 at 2, DT spelled out its trademark concerns under EU and German law, and its worries of a likelihood of confusion in the EU caused by Splunk's color schemes, *id*. at 4, 9-10.[1] The letter provided copies of Splunk's German promotional materials, including an ad featuring Splunk employees, some dressed in lederhosen, standing next to a giant pretzel and beer mug. *Id*. at 7-8. The letter also provided screenshots of Splunk's social media in English. *Id.* at 6. The letter concluded with a demand under German law that Splunk sign a cease-and-desist declaration. *Id*. at 11. The declaration, which is also in Exhibit D, referred to conduct in the EU and provided for dispute resolution in "the competent courts of Hamburg." *Id*. at 23.

The linchpin of Splunk's jurisdiction theory is in the closing sentence of DT's letter. As a final substantive comment just above the signature line, the letter stated that DT "reserves its right to take legal action against the use of Magenta by Splunk" under U.S. trademark law. Dkt. No. 1 ¶ 35. Splunk contends that this reservation of rights, coupled with DT's trademark action in Germany, establish an actual case or controversy suitable for adjudication.

At a hearing on the motion, the Court expressed doubt that Splunk had proffered enough facts to trigger federal jurisdiction. *See* Dkt. No. 33 (Hr'g Tr.). This doubt grew substantially when counsel for DT expressly represented in response to a question by the Court that "[t]here isn't a plan to sue Splunk" in the United States. *Id*. at 11:8-10. The Court kept the motion under submission to see if developments affecting the question of jurisdiction might take place. Neither

---

[1] The page numbers for Exhibit D refer to the ECF numbers in the docket header.

side has advised the Court of any developments, and the time has come to dismiss the complaint.

Under Article III of the Constitution, federal courts can adjudicate only actual cases or controversies. U.S. Const. art. III, § 2, cl.1. The Declaratory Judgment Act (DJA) is premised on the same requirement. 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). "Absent a true case or controversy, a complaint solely for declaratory relief under [Section 2201] will fail for lack of jurisdiction under Rule 12(b)(1)." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (brackets added).

To determine whether a DJA case should go forward, the Court first confirms that an actual case or controversy is presented by the complaint. *Principle Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2004). If so, the Court then decides whether to exercise jurisdiction, which is a matter entrusted to its sound discretion. *Id*.

"[T]rademark disputes are justiciable under the Declaratory Judgment Act when 'the plaintiff has a real and reasonable apprehension that he will be subject to liability.'" *FN Cellars, LLC v. Union Wine Co.*, No. 15-cv-02301-JD, 2015 WL 5138173, at *2 (N.D. Cal. Sept. 1, 2015) (quoting *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982)). For this inquiry, the Court focuses "upon the position and perceptions of the plaintiff" and the "acts of the defendant," which are "examined in view of their likely impact on competition and the risks imposed upon the plaintiff." *Chesebrough-Pond's*, 666 F.2d at 396 (cleaned up). The showing of apprehension "need not be substantial" when an allegedly infringing mark is in use. *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 944 (9th Cir. 1981).

There is no bright-line application of these factors to decide justiciability. "The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (internal quotation omitted); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.").

On the record before the Court, Splunk has not demonstrated a reasonable apprehension of being sued in the United States by DT. The salient facts, which are not in dispute, are that DT: (1) sent a demand letter to Splunk under German and EU law for Splunk's conduct in Europe; (2) filed a trademark action against Splunk in Germany over the EU conduct; (3) reserved its trademark rights under U.S. law; and (4) has not sued Splunk in the United States, and did not oppose Splunk's trademark proceedings before the TTAB.

These facts are a country mile from the circumstances typically deemed sufficient to establish DJA jurisdiction. In *Rhoades*, for example, the circuit court concluded that a reasonable apprehension for jurisdictional purposes was demonstrated by facts showing that the trademark holder's lawyer had expressly threatened to bring an infringement action during a meeting, sent a letter threatening "litigation," and told opposing counsel his client would not give up its right to damages. *Rhoades*, 504 F.3d at 1157-58. In *Coheso, Inc. v. Can't Live Without It, LLC*, a decision that Splunk cites approvingly throughout its brief, the district court found a reasonable apprehension of liability in circumstances where a lawyer for the trademark holder sent a letter alleging infringement in the United States, among other jurisdictions, and listing claims under federal and state law, and for damages and attorney's fees. Case No. 17-cv-03381, 2017 WL 10434396, at *1, *5 (N.D. Cal. Dec. 18, 2017).

Splunk has not alleged any similar circumstances here. To be sure, as this Court has observed in another case, an express threat of a lawsuit is not a precondition of a reasonable apprehension. *See FN Cellars*, 2015 WL 5138173, at *3; *see also Rhoades*, 504 F.3d at 1157 ("a threat of infringement does not have to be said in so many words) (internal quotation omitted). But the centerpiece of Splunk's argument is merely a reservation of rights. In ordinary usage, to reserve a right is to refrain from exercising it. In addition, the letter from DT did not mention, let alone assert, any particular claims or damages under United States laws. Splunk has not presented evidence of any other threats, implicit or otherwise, made against it by DT with respect to the United States.

The absence of a reasonable apprehension of liability in the circumstances before the Court forecloses justiciability under the DJA. Splunk tries to escape this conclusion by citing the DT

4

action in Germany, but that is of no moment for present purposes. A "trademark has a separate legal existence in each country and receives the protection afforded by the laws of that country." *Am. Circuit Breaker Corp. v. Or. Breakers Inc.*, 406 F.3d 577, 582 (9th Cir. 2005) (cleaned up). Splunk has not presented evidence showing that what has happened in Germany won't stay in Germany. Splunk also suggests that the balance tips in its favor because DT is said to have "aggressively asserted" its trademark rights against other companies. Dkt. No. 1 ¶ 24. Even taking that as true, there is nothing inherently wrong with enforcing a valid mark. Splunk does not allege bad faith or other misconduct by DT with respect to its trademark rights, and a "failure to enforce their rights may result in the weakening of these rights over time." *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23 (1st Cir.2002). In addition, Splunk does not allege that DT's enforcement practices resulted in litigation in the United States. It bears repeating that DT has represented to the Court that it does not plan to pursue an action against Splunk in the United States.

This is enough to dismiss the complaint for lack of jurisdiction. The Court does not need to decide, using the factors in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), whether to exercise its jurisdiction. *See Principal Life Ins. Co.*, 394 F.3d at 669.

The remaining question is whether to terminate the case or allow Splunk an opportunity to amend. The absence of jurisdiction weighs in favor of termination, but the Court opened the door at the hearing to the possibility of amending, and will stick with that. *See* Dkt. No. 33 at 14:6-13. Splunk may file by August 16, 2021, an amended complaint that addresses the jurisdiction issues discussed in this order. No new claims or parties may be added without the Court's prior approval. A failure to meet the filing deadline or otherwise comply with this order will result in a dismissal under Rule 41(b).

**IT IS SO ORDERED.**

Dated: July 26, 2021

JAMES DONATO
United States District Judge

5